Strafford
No. 92-206

## THE STATE OF NEW HAMPSHIRE

v.

## STEVEN C. NOEL

July 7, 1993

*Jeffrey R. Howard*, attorney general (*John A. Curran*, attorney, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant was convicted of burglary, RSA 635:1 (1986). On appeal, he challenges the Superior Court's (*Coffey*, J.) ruling denying his motion to suppress. For reasons that follow, we affirm.

During the afternoon of February 13, 1991, Chief Paul Gelinas of the New Durham Police Department was patrolling South Shore Road, a cul-de-sac, approximately 4 miles long. That neighborhood, which is primarily a summer community with few year-round residents, had experienced approximately twelve burglaries within the previous six weeks. While on South Shore Road, the chief passed a blue Toyota pick-up truck traveling in the opposite direction, exiting the cul-de-sac. A woman drove the truck, and a man occupied the passenger's seat. The open back of the truck was loaded with furniture, which appeared to have been unaffected by the sand, salt and snow that "was just flying over everything" on the road.

Based on his observations and his knowledge of the numerous burglaries, the chief suspected that the furniture had been stolen from one of the homes on South Shore Road. Approximately four hundred feet from where he passed the pick-up truck, the chief turned his marked cruiser around and pursued the vehicle. Despite substantially exceeding the posted speed limit, he was unable to catch the vehicle. He radioed to Sergeant David Perkins of the New Durham Police to stop the vehicle to investigate. Sergeant Perkins received the radio transmission around 2:55 p.m., and stopped the vehicle at approximately 3:05 p.m.

Sergeant Perkins explained to the occupants that he stopped the truck because there had been several recent burglaries in the area and Chief Gelinas wanted to determine whether the furniture belonged to the occupants in the truck. Patricia Arnold was the driver of the vehicle, and the defendant was the passenger. The defendant claimed that he purchased the furniture that morning from an Eddie Lawrence in Allenstown for $275, but that he did not have a receipt or bill of sale. While Sergeant Perkins was checking on the registration and whether an Eddie Lawrence existed in Allenstown, the chief arrived on the scene and confirmed that Sergeant Perkins had stopped the appropriate vehicle. Within a few minutes, the chief drove back down South Shore Road to see if any homes had been burglarized.

Sergeant Perkins learned from the dispatcher that there was no one by the name of Eddie Lawrence listed in the Allenstown area.

Sergeant Perkins relayed this information to the defendant, who then modified his story claiming that Eddie Lawrence was from Massachusetts, and that the sale occurred at the home of Eddie Lawrence's son, Richard. The dispatcher was busy at this time and could not confirm whether a Richard Lawrence lived in Allenstown.

Within fifteen to twenty minutes of the initial stop, Sergeant Perkins radioed Trooper David Wheeler of the New Hampshire State Police for assistance "because [he] felt there was definitely a problem with this particular vehicle and the furniture and the results, the answers [he] was getting from these people." Trooper Wheeler arrived at the scene and observed "that the furniture in the truck in [his] opinion had not been there very long, if more than a few minutes . . . ." Trooper Wheeler asked Ms. Arnold to exit the vehicle and stand near the rear of the truck while the defendant remained inside the truck. He gave her *Miranda* warnings and asked her questions regarding the furniture. He testified that she stated that she and the defendant had purchased the furniture at 11:00 a.m. that morning from an Eddie Lawrence who lived in Suncook, and that Lawrence's house was brown and had a driveway on the left side.

Trooper Wheeler then asked the defendant and Ms. Arnold to switch positions. After giving the defendant *Miranda* warnings, he asked the defendant a series of questions similar to those posed to Ms. Arnold. Trooper Wheeler testified that the defendant stated that he had purchased the furniture in Suncook from an Eddie Lawrence at 9:00 a.m. that morning, and that he could not remember the color of the house, but said that the driveway was on the right side.

After the questioning, Trooper Wheeler advised the defendant and Ms. Arnold that their stories were inconsistent. Because the answers given by the defendant and Ms. Arnold heightened the officers' suspicions that the furniture had been stolen, the officers conferred as to what should occur next. Sergeant Perkins advised the defendant that the officers believed that the furniture might be stolen. He then asked the defendant "if it would be possible if [the officers] held onto the furniture until such time [the defendant] could produce a receipt." He also told the defendant that otherwise he "may have to charge [the defendant] for the receiving of stolen property." Sergeant Perkins testified that the defendant "advised me at that time that he'd be more than glad to let us hold onto the furniture until such time [the defendant] . . . got a receipt." Sergeant Perkins also testified that he requested the defendant to drive the furniture to the police station, and the defendant agreed to do so.

Approximately two minutes after the officers and the suspects left for the police station, the officers received a radio transmission from

Chief Gelinas that he had discovered a break-in at the Frost residence on South Shore Road. Within a matter of minutes, the suspects were formally arrested in the parking lot of the New Durham Police Department.

After a hearing, the superior court denied the defendant's motion to suppress any and all evidence obtained from the investigative stop and subsequent arrest. At the suppression hearing, the defendant argued that the stop and subsequent arrest were in violation of his constitutional right to be free from unreasonable searches and seizures. N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. The defendant negotiated a plea in which he voluntarily waived his right to a jury trial, accepted a finding of guilty based on the sufficiency of the State's proposed evidence, but pled not guilty so that he could appeal the court's denial of his motion to suppress.

We independently consider the defendant's claims first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing to federal law only as an aid in our analysis, *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because, under the facts of this case, "the federal law is not more favorable to the defendant, we make no separate federal analysis." *Id.*

 On appeal, the defendant has admitted that the initial stop was permissible under *Terry v. Ohio*, 392 U.S. 1, 16–20 (1968), and its progeny. *See Florida v. Royer*, 460 U.S. 491, 502 (1983); *United States v. Mendenhall*, 446 U.S. 544, 554–55 (1980); *State v. Reid*, 135 N.H. 376, 380, 605 A.2d 1050, 1052 (1992); *State v. Brodeur*, 126 N.H. 411, 415, 493 A.2d 1134, 1137–38 (1985); *Maya*, 126 N.H at 595, 493 A.2d at 1143–44. Law enforcement officials are permitted to "temporarily detain a suspect for investigatory purposes, on grounds that do not amount to probable cause to arrest [the suspect] for the commission of a crime" if the officers "have an articulable suspicion that the person detained has committed or is about to commit a crime." *Maya*, 126 N.H. at 595, 493 A.2d at 1143. Both the State and Federal Constitutions mandate that "'[t]he scope of the detention must be carefully tailored to its underlying justification . . . must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. at 500). Because the defendant concedes that there are no constitutional infirmities with the investigative stop, all evidence obtained during the course of that stop is admissible.

The defendant argues, however, that the moment the police officers gave him and his partner a choice between bringing the furniture to the police station or being arrested, he was arrested without

probable cause. He admits that the officers gained probable cause approximately two minutes after the purported arrest when the chief radioed to the officers that he had found evidence of a burglary on South Shore Road. The defendant contends, however, that this subsequent acquisition of probable cause is insufficient to justify the arrest. He argues that all evidence, including the furniture itself, obtained as a result of the arrest should be suppressed as fruits of a poisonous tree.

The State argues that while the defendant was temporarily seized pursuant to an investigative stop, his choice to go to the police station did not amount to a *de facto* arrest. It contends that the arrest upon probable cause properly occurred in the police station parking lot after the officers were notified that evidence of a burglary on South Shore Road had been discovered, and thus, any evidence obtained as a result thereof is admissible.

The question here is whether the defendant was arrested at the moment he and his partner left the site of the initial stop to drive the furniture to the police station, or whether the arrest occurred in the parking lot at the police station.

> "The police conduct should be judged in terms of what was done rather than what the officer involved may have called it at the time. If an officer tells the suspect he is under arrest but then conducts only a frisk and finds a weapon, a later determination that grounds for arrest were lacking should not render inadmissible the discovered weapon if there were in fact grounds for a stop and the frisk. Obviously the result would be otherwise if the search exceeded that permissible under *Terry*."

W. LaFave & J. Israel, Criminal Procedure § 3.8, at 205 (1992).

■■ There is no dispute that the officers conducted a reasonable investigatory stop, commencing at approximately 3:05 p.m., based on an articulable suspicion that the furniture in the back of the truck had been stolen. Further, it is clear that the defendant was seized both at the moment he was stopped and while en route to the police station with the furniture, because "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Not every seizure, however, rises to the level of an arrest." *Reid*, 135 N.H. at 380, 605 A.2d at 1053. "[A] reasonable perception of loss of freedom to leave signals that a

seizure has occurred, but not necessarily that the seizure is an arrest, as distinguished from a more limited *Terry-Brodeur* stop for investigation." *State v. Chaloux*, 130 N.H. 809, 814, 546 A.2d 1081, 1084 (1988). An arrest is defined under RSA 594:1 (1986) as "the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime." We have held that "the determination of when an arrest occurs depends upon the facts and circumstances of a particular case." *Reid*, 135 N.H. at 381, 605 A.2d at 1053.

■ Although the defendant and his partner were given a choice to either drop off the furniture or be arrested, the defendant's decision to proceed to the station with the furniture did not amount to an arrest. *See* LaFAVE & ISRAEL, *supra* § 3.8, at 205. The furniture was seized pursuant to a continuation of the investigatory stop, *see United States v. Sharpe*, 470 U.S. 675, 684–85 (1985) (limited investigatory seizures of personalty permissible under *Terry*), and although the defendant and his partner were seized pursuant to the *Terry* stop, they were not actually or constructively arrested. *See Reid*, 135 N.H. at 381–82, 605 A.2d at 1053 (factors considered in reasonableness of detention under *Terry* include: diligence of police investigation, scope, intrusiveness, and duration of detention). If the police had not received notice that a burglary was discovered on South Shore Road prior to arriving at the police station, the defendant and his partner would have been free to leave as soon as they deposited the furniture. If the defendant had deposited the furniture according to plan, the continued detention of the furniture would have been permissible as a limited investigatory seizure so long as the police had a "reasonable, articulable suspicion, premised on objective facts" that the furniture was stolen, *United States v. Place*, 462 U.S. 696, 702 (1983); *see United States v. Sharpe*, 470 U.S. at 684–85, and they acted diligently to either confirm or dispel their suspicion. *Sharpe*, 470 U.S. at 688. We need not examine whether the police continued to act diligently after they arrived at the police station because they gained the requisite probable cause to arrest the defendant and permanently seize the furniture prior to arriving at the station.

Under the circumstances of the instant case, the officers acted as swiftly, diligently, and nonintrusively as possible. While diligently pursuing their investigation, the officers received information that served only to heighten their suspicions. It would unduly restrict legitimate police work if we required the police to allow the defendant and his partner to leave freely with this highly suspicious furni-

ture. The police attempted to limit their interference with the defendant's personal freedom by giving him the option to leave once he deposited the furniture at the police station only a few miles away. At 3:47 p.m., within approximately forty-two minutes of the initial stop, the officers' suspicion was transformed into probable cause when evidence of a burglary was found. Thereafter, the police rightfully arrested the defendant in the police station parking lot. Under the circumstances of this case, the forty-two minute detention prior to obtaining probable cause and the transportation of the furniture to the police station did not constitute an unreasonable search or seizure under our constitution.

We, therefore, hold that the superior court properly denied the motion to suppress.

*Affirmed.*

All concurred.