# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0461, <u>State of New Hampshire v. Christopher T. Dastrup</u>, the court on November 16, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See Sup. Ct. R. 18(1). The defendant, Christopher T. Dastrup, appeals his conviction, following a jury trial in Superior Court (Howard, J.), on four charges of indecent exposure and lewdness for having exposed his genitals to children in a department store. See RSA 645:1 (2016). On appeal, he argues that the trial court erred by: (1) not suppressing, under the State and Federal Constitutions, identification evidence; (2) excluding certain opinion testimony from a defense witness concerning law enforcement identification procedures; (3) admitting edited video surveillance footage from the store where the crimes occurred and testimony from the person who created the edited video; and (4) determining that the evidence was sufficient to support his conviction. We affirm.

We first address whether the trial court erred by denying the defendant's motion to suppress. We address his arguments under the State Constitution first and rely on federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). We will not overturn the trial court's ruling on a motion to suppress identification testimony unless it is contrary to the weight of the evidence. State v. Perri, 164 N.H. 400, 404 (2013). We ask whether the identification procedure used by the police was so unnecessarily suggestive and conducive to irreparable misidentification that it denied the defendant due process. Id. It is the defendant's burden to establish that the identification procedure was unnecessarily suggestive. Id. If the defendant satisfies this burden, the State must demonstrate, by clear and convincing evidence, that pursuant to the factors set forth in Neil v. Biggers, 409 U.S. 188 (1972), the procedure was not so suggestive as to have rendered the identification unreliable. Perri, 164 N.H. at 404; State v. Whittey, 134 N.H. 310, 312 (1991).

The record from the suppression hearing establishes that the victims, two children, were playing in a department store when the older child, who was eleven years old, noticed a man staring at them, causing her discomfort. At that time, the children were unaccompanied by an adult. The children left that area of the store, deliberately walking past the man in order "to get a better look at" him so that the older child might be able to describe him if necessary. As the children walked past the man, his penis was exposed. After the children left that area of the store, they went to the toy section of the store, where they

encountered the same man. The children left the toy area and encountered the man a third time in the apparel section of the store, where he again exposed his genitals. After the third encounter, the children found the older child's father and disclosed what they had seen. The father then followed the man closely to the front of the store and reported the matter to customer service personnel. The man left the store before store officials could confront him.

That same evening, the father and older child reported the matter to the local police department. They described the man as a tall, white male wearing a gray or white tee-shirt,[1] a denim baseball cap, glasses, and plaid shorts. On the following day, a detective contacted the store's asset protection manager, who reviewed the store's surveillance video and identified a potential suspect. However, the detective determined that the identified suspect did not match the descriptions provided by the father and child because he was not wearing glasses, his shorts and hat did not match the clothing described, and he was pushing a shopping cart, a detail not included in the descriptions. Moreover, the individual did not appear to be following anyone.

Subsequently, the asset protection manager and detective identified a different, tall white man wearing a dark hat, white tee-shirt, plaid shorts, and glasses (second suspect). The video showed the second suspect near the two children on multiple occasions, at times looking in their direction, including within areas of the store in which the children reported seeing the man who had exposed himself. The video additionally showed the children speaking with the older child's father and appearing to identify the second suspect to the father, and the father then following the second suspect through the store. Finally, the video showed the second suspect in a self-checkout aisle looking across the store at the customer service desk at the same time that the father and children were at the customer service desk speaking with store personnel. At the detective's request, the asset protection manager sent a still photograph of the second suspect to the older child's father, who within hours confirmed that the photograph depicted the same person that he had described. Without instruction from the police to do so, the father showed the photograph to the older child, who likewise confirmed that the man in the photograph was the same man who had exposed himself.

At that point, the police published the photograph on its Facebook page and solicited the public's assistance to identify the man. A member of the public identified the person in the photograph as the defendant, and the defendant subsequently admitted that he is the person in the photograph and that he was in the store at the time of the incidents at issue.

---

[1] When the child and father reported the matter on the evening that the incident had occurred, both described the man as wearing a gray tee-shirt. At a forensic interview less than a week later, the child described the tee-shirt as white.

2

The defendant moved to suppress, arguing that the act of showing the photograph to the older child's father amounted to a single person show-up. The defendant suggested that the first person identified as a potential suspect by the asset protection manager more accurately matched the descriptions provided by the older child and her father. The State conceded that the identification procedure was unnecessarily suggestive, but argued that the out-of-court identifications were reliable pursuant to the Biggers factors. Following a three-day suppression hearing, the trial court denied the motion.

Shortly before trial, the State showed portions of the surveillance video footage to the older child in preparation for her trial testimony. The prosecutor asked the child whether she saw anyone she recognized in the video, at which point she pointed to the defendant and said, "yeah, that's the guy who was doing this." The defendant argued that the prosecutor's question constituted an "out-of-court identification . . . covered by the suppression motion," that the child's response was tainted by the photograph she had viewed at the outset of the case, and that the child should not be allowed to view the video at trial and testify that "that's the person who exposed himself to us." The defendant acknowledged, however, that absent the allegedly defective identification procedure involving the photograph, the State's trial preparation with the child would have been proper. The trial court rejected the defendant's argument.

On appeal, the defendant argues that both the sending of the photograph to the father and the State's pretrial preparation of the older child constituted impermissible single-person show-up identification procedures that necessarily rendered the subsequent identifications of the defendant unreliable. The defendant suggests that Biggers does not comport with "the evolution of our scientific and legal systems' understanding of the injustice caused by the continued use of . . . defective and unreliable [identification] procedures," and invites us to construe the State Constitution as more protective of the defendant's rights than Biggers. The defendant further contends that the trial court misapplied Biggers in finding the identifications reliable.

We have observed that a one-person show-up is inherently suggestive. See State v. Leclair, 118 N.H. 214, 219 (1978); State v. Butler, 117 N.H. 888, 891 (1977). We have also recognized, however, that such a procedure may be justified by exigent circumstances. See Leclair, 118 N.H. at 219. Assuming, without deciding, that sending the photograph to the father constituted an identification procedure, and that there were no exigent circumstances, we conclude that the trial court reasonably found the identifications reliable.

The factors that the trial court must consider when evaluating the reliability of an identification include: (1) the witness's opportunity to view the suspect; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the witness's degree of certainty at the time of the identification; and (5) the lapse of time between the crime and the

identification. Perri, 164 N.H. at 404; see Biggers, 409 U.S. at 199-200. Here, the trial court found that: (1) the child had ample opportunity to view the defendant after seeing him multiple times within a short period and after deliberately passing by him; (2) the father likewise had an opportunity to view the defendant after the child described him and the father followed him through the store; (3) the child's degree of attention was significant as evidenced by her decision to pass directly by the defendant to get a better view of him and her description of several identifying features; (4) the father's degree of attention, after the child reported the defendant's conduct, was likewise focused on the defendant as he followed him through the store; (5) the descriptions by the child and father were very accurate, consistent with each other, and consistent with the defendant's actual appearance; (6) both the child and father were resolute and unequivocal in their levels of certainty; and (7) the lapse of time between the crimes and the identifications was minimal. These findings are supported by the record, and in turn support the trial court's determination that the identifications were reliable. Upon this record, the trial court's finding that the identifications based upon the photograph were reliable was not contrary to the weight of the evidence. Perri, 164 N.H. at 404.

To the extent that the defendant argues that the State's action in showing the surveillance video to the child in preparation for her testimony constituted an additional improper identification procedure, the defendant acknowledged at trial that, but for his claim that sending the photograph was an unconstitutional identification procedure that "polluted" the child's memory, the State's pretrial preparation would have been permissible. Because we have upheld the trial court's determination that the identifications based upon the photograph were reliable, we reject the argument that the State's pretrial preparation of the child amounted to an additional impermissible pretrial identification procedure.

We next address the defendant's evidentiary arguments. We review the trial court's evidentiary rulings for unsustainable exercises of its discretion. State v. Colbath, 171 N.H. 626, 632 (2019). To establish that the trial court unsustainably exercised its discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. In applying this standard, we determine only whether the record establishes an objective basis sufficient to sustain the trial court's discretionary judgments. Id.

The defendant first argues that the trial court erred by excluding opinion testimony from his proffered expert concerning law enforcement identification procedures. The defendant sought to introduce testimony at trial from a former law enforcement officer that "one person or one photo showups are overly suggestive," that such procedures "are not necessarily, in and of themselves, unreliable," and that it is for the trial judge to determine whether an identification resulting from a one-photo show-up is reliable. Additionally,

the defendant proffered that the witness would testify as to proper procedures that law enforcement officers are taught for procuring identifications. We note that the defendant also offered such testimony, and that the trial court considered it, within the context of the pretrial motion to suppress. The trial court ruled that such testimony was not relevant at trial, and that it was cumulative of testimony of the detective, who had acknowledged that a single-photograph "show-up" identification procedure is "not a preferred" law enforcement practice because it is "overly suggestive."

We conclude that the trial court sustainably exercised its discretion. Evidence is relevant only if the fact for which it is offered "is of consequence in determining the action." N.H. R. Ev. 401(b). Moreover, the trial court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." N.H. R. Ev. 403. In this case, the State conceded that the act of sending a single photograph of the defendant to the father was unnecessarily suggestive. The trial court, however, determined that the resulting identifications were reliable. Under these circumstances, the trial court reasonably could have determined that the proffered testimony would not have established a fact that was of consequence to the case, and that any probative value of the testimony was substantially outweighed by the unnecessarily cumulative nature of it.

The defendant next argues that the trial court erred by admitting into evidence edited surveillance video footage and testimony from the person who created the edited footage. At trial, the State introduced as a full exhibit the raw, unedited footage from the surveillance video preserved by the asset protection manager, consisting of 23 separate video files captured by various security cameras throughout the store. Those videos were played, in their entirety, for the jury. In addition, both the father and the older child viewed portions of the raw video files during their trial testimony, and identified the defendant, the children, and the father in them. The defendant does not challenge the admissibility of the raw video footage.

Additionally, the State introduced a "timeline compilation video," prepared from the raw video footage by a field photographer and forensic video examiner for the Federal Bureau of Investigation (videographer). In preparing the compilation, the videographer relied upon information from the police describing the relevant parties and other relevant information. She then pieced together all of the portions of the raw video files from the different cameras containing footage of the people matching the descriptions provided to her into a single video in chronological order so that it would appear "like you're watching somebody go through the store . . . as opposed to watching somebody come through . . . the front camera, watching the whole front camera and then watching the next thing they're in and watching the whole footage of that." The videographer also added to the video, at points of the footage in which "it

might be confusing as to who [was] who," graphics consisting of a red circle around the defendant and yellow circles around the children and father.

On appeal, the defendant argues that the trial court erred by admitting the compilation video into evidence because: (1) it was allegedly based upon "unreliable information and hearsay"; (2) the videographer "was not certified as an expert and had no part in the investigations of the case"; and (3) the videographer's testimony "constituted improper or impermissible lay or expert testimony, which invaded the fact-finding province of the jury." We disagree.

The mere fact that the videographer relied upon information provided to her by the police in order to identify the relevant portions of the raw footage and to place graphics consisting of colored circles around the relevant parties does not render the video inadmissible hearsay. Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted in the statement. See N.H. R. Ev. 801(c). The compilation video itself was not an out-of-court "statement," and although out-of-court statements may have been used in its creation, as the State observes, the video was not offered to prove the truth of those statements or to identify the defendant. To the contrary, at the time that the compilation timeline video was introduced into evidence, the older child and her father had already identified for the jury the defendant, the children, and the father in portions of the raw video footage.

Nor does it matter that the videographer was not certified as an expert and was not involved in investigating the case. The videographer did not provide opinion testimony. Nor did she provide testimony regarding the criminal investigation. Rather, her testimony was introduced solely to authenticate and lay the necessary foundation to admit the compilation video into evidence. See N.H. R. Ev. 901. Having created the compilation video, the videographer had the requisite personal knowledge to testify concerning what it was and how she created it in order to authenticate it. See N.H. R. Ev. 602, 901. Once the State established that the compilation video was what it was purported to be, it was for the jury to evaluate its weight and credibility, and we reject the defendant's suggestion that merely by adding circles around the parties whom the videographer was following in the video, the videographer "invaded the fact-finding province of the jury." See State v. Alwardt, 164 N.H. 52, 57 (2012) (stating that witness credibility and weight to be given evidence are matters for the jury to evaluate); State v. Reid, 135 N.H. 376, 383 (1992) (observing that State need only establish prima facie case on authentication, and that once admitted, "the rest is up to the jury" (Quotation omitted.)); Saavedra v. State, 225 A.3d 364, 381 (Del. 2020) (rejecting argument that placing red circle around individual in video whom detective identified as defendant was improper, observing that the circle "merely direct[ed] the viewer to the place on the video that was the subject of the witness's testimony," and that "it remained . . . for the jury to decide what and whom could be seen within the red circle"). We note that in evaluating the weight and credibility of

the compilation video, the jury had at its disposal both the raw video footage and the testimony of the older child and father identifying the relevant parties, including the defendant, within the raw footage.

The defendant's only argument on appeal for why the information provided to the videographer was "unreliable" is that it included "possible tattoos" as a descriptor, when neither the older child nor her father had conveyed this descriptor in their original descriptions. As noted above, however, the police were able to identify the defendant in the surveillance video based upon the original descriptions by the father and child, and the defendant does not claim that he lacks any visible tattoos, or that the police otherwise had no basis to convey this descriptor to the videographer following their determination that the person they had identified in the video was in fact the defendant. Moreover, the videographer testified that the presence of tattoos "was probably the least thing [she] was looking at because" tattoos were not always noticeable in the video footage. Although the jury was free to consider the discrepancy between the original descriptions of the defendant and the information provided by the police to the videographer in evaluating the weight and credibility of the compilation video, see Alwardt, 164 N.H. at 57, the defendant cites no authority standing for the proposition that such a discrepancy necessarily rendered the video compilation inadmissible.

The defendant raises no other evidentiary objection to the admissibility of the compilation video. Upon this record, we cannot say that the trial court's decision to admit the compilation video into evidence was clearly untenable or unreasonable to the prejudice of his case. Colbath, 171 N.H. at 632.

Finally, we address the defendant's argument that the evidence was insufficient to support his conviction. The defendant argues that the evidence was insufficient because the older child "could not remember or provide details of the actual crimes alleged without being prompted and led by the prosecutor." According to the defendant, the surveillance video "provided nothing close to proof beyond a reasonable doubt that he exposed himself to these girls." The defendant claims that the video was, in fact, exculpatory. We disagree.

To prevail on his challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Papillon, 173 N.H. 13, 30 (2020)). A challenge to the sufficiency of the evidence raises a claim of legal error, which we review de novo. Id. Matters such as weighing the evidence, evaluating witness credibility, and resolving conflicts in testimony are for the jury to resolve. State v. Woodbury, 172 N.H. 358, 364 (2019).

To convict the defendant of two of the charges in this case, the State was required to prove that, with respect to each child, he (1) purposely, (2) exposed,

his genitals, (3) knowing that a child under the age of sixteen was present, (4) under circumstances that may reasonably be construed as having been for the purpose of sexual gratification or arousal.  See RSA 645:1, II(a).  To convict him of the remaining two charges, the State was required to prove that, as to each child, he (1) purposely, (2) performed an act of sexual contact on himself, (3) when a child under the age of sixteen was present.  See RSA 645:1, II(b).

The evidence at trial establishes that, on September 28, 2017, when the older child was eleven years old and the younger child was five, the older child noticed a man staring at both children when they were unaccompanied by an adult in a department store.  This conduct caused the older child to feel uncomfortable, prompting her to leave that area of the store with the younger child.  The older child testified that when the children passed by the man, she saw that his "private area," which she described as his "PP" or the part of the body that a boy uses to "pee," was exposed.  The older child testified that she held the younger child's hand and "made sure [that the younger child did not] see anything," and continued to walk to the toy section of the store.  While the children were in the toy section, the older child noticed that the same man had followed them and was again staring at them.  At that point, the older child testified that the children left the toy area to search for her father.  While looking for her father, the older child testified that the children encountered the man a third time in the apparel section of the store, that the man was again staring at them, that the man had again exposed his "private area," and that this time he was touching his "private area" with his hand.

The children then saw the older child's father, ran to him, and according to the father, the older child said that a man was "following [her] around" the store and "had his penis out."  The older child pointed the man out to the father, and the father then followed him from a distance of fifteen to twenty feet through the store to the checkout area, where the father reported the matter to store personnel at the customer service desk.  Both the older child and the father identified the man in the store's security footage.  Additionally, the father identified the man in a photograph produced from the security footage.  Other evidence introduced at trial, including the photograph, testimony identifying the man in the photograph as the defendant, and items seized upon the execution of a search warrant of the defendant's apartment, establish that the man in the security footage was, in fact, the defendant.  The security footage itself shows the defendant following the children through the store, staring at the children, placing his hand in the area of his crotch while in the children's vicinity, retreating once the father approached him, being followed by the father and children through the store to the checkout area, and peering across the store in the direction of the father and children as they were at the customer service desk speaking with store personnel.

Although the prosecutor may have led the older child in portions of her testimony, and although no portion of the security footage specifically shows

the defendant's exposed genitals, these were matters for the jury to evaluate in weighing the evidence. <u>Woodbury</u>, 172 N.H. at 364. We conclude that when viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to have found, beyond a reasonable doubt, that the defendant committed the charged crimes. <u>Papillon</u>, 173 N.H. at 30.

The defendant's remaining arguments are either insufficiently developed, <u>see</u> <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, <u>see</u> <u>Vogel v. Vogel</u>, 137 N.H. 321, 322 (1993). Arguments raised for the first time in the defendant's reply brief are waived. <u>See</u> <u>Panas v. Harakis & K-Mart Corp.</u>, 129 N.H. 591, 617-18 (1987).

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**